IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**HELEN ANUSIONWU**                                                                               **PLAINTIFF**

**v.**                                                       **CIVIL ACTION NO.: 3:20-cv-758-TSL-MTP**

**COMMISSIONER OF SOCIAL SECURITY**                                  **DEFENDANT**

## REPORT AND RECOMMENDATION

Plaintiff Helen Anusionwu brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security Administration denying her claim for supplemental security income. Having considered the submissions of the parties and the applicable law, the undersigned recommends that the Commissioner's final decision be AFFIRMED, and this action be DISMISSED with prejudice.

## PROCEDURAL HISTORY

On December 6, 2017, Plaintiff applied for supplemental security income alleging disability beginning November 10, 2017[1] due to "low vision," back pain, foot pain, hypertension, anxiety, depression, and leg pain. (Administrative Record [9] at 224). After the agency denied Plaintiff's claim, an Administrative Law Judge ("ALJ") held a hearing ([9] at 49-66). On January 22, 2020, the ALJ issued a decision finding that Plaintiff was not disabled. ([9] at 19-25). On September 24, 2020, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner ([9] at 5-7). Plaintiff now seeks judicial review in this Court under 42 U.S.C.§ 405(g).

---

[1] Plaintiff previously applied for disability insurance benefits on August 21, 2015, but the Administrative Law Judge issued a decision finding that Plaintiff was not disabled through November 15, 2017. ([9] at 70-76). Plaintiff now alleges that her disability began on November 10, 2017.

### ADMINISTRATIVE LAW JUDGE'S DECISION

In her January 22, 2020, decision, the ALJ applied the five-step sequential analysis set forth in 20 C.F.R. § 404.1520(b)-(f)[2] and determined that Plaintiff was not disabled. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her application date. At step two, the ALJ found Plaintiff had the following medically determinable impairments: hypertension, obesity, peripheral neuropathy, ganglion cyst on left dorsal foot, vision impairment, depression, and anxiety. The ALJ, however, determined that Plaintiff did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for twelve consecutive months and, therefore, did not have a severe impairment or combination of impairments pursuant to 20 C.F.R. § 404.1521 *et seq*. Accordingly, the ALJ found that Plaintiff was not disabled. ([9] at 22-25).

### STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382

---

[2] This analysis requires the ALJ to make the following determinations:
  (1) whether the claimant is presently engaging in substantial gainful activity (is so, a finding of "not disabled" is made);
  (2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);
  (3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (is so, then the claimant is found to be disabled);
  (4) whether the impairment prevents the claimant from doing past relevant work (if not, a finding of "not disabled" is made);
  (5) whether the impairment prevents the claimant from performing any other substantial gainful activity (is so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.92. The burden of proof rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

(5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983). To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established." *Id*. (citations omitted).

However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617. Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

## ANALYSIS

Plaintiff raises two issues for review: (1) whether the ALJ erred in concluding that Plaintiff's peripheral neuropathy and lumbar spine were not severe impairments and (2) whether the ALJ's finding that Dr. Hartness's opinion was unpersuasive is supported by substantial evidence.

*Issue 1: Severe Impairments*

Plaintiff claims that her peripheral neuropathy significantly limits her ability to stand and walk. Plaintiff also claims that degenerative changes in her lumbar spine impact her ability to stand and walk and that she has been prescribed a cane. ([11] at 11). Plaintiff argues that the ALJ erred by concluding that these impairments were not severe. ([11] at 2).

As previously mentioned, at step two of the sequential analysis, an ALJ determines whether the claimant has a severe impairment. An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). An impairment is not severe "if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (citations omitted). Plaintiff bears the burden of proving that she suffers from a severe impairment. *See Giles v. Astrue*, 433 Fed. App'x 241, 246 (5th Cir. 2011).

There is a dearth of physical evidence to support Plaintiff's claim that her peripheral neuropathy and lumbar spine impairments are severe. At the time Plaintiff filed her most recent application for supplemental security income ("SSI"), she was 61 years old.[3] ([9] at 39). She was regularly documented as being ambulatory, with a normal gait, without the use of an assistive device. ([9] at 361, 365-66, 374, 448, 449). While Plaintiff claims that she has a prescription for a back brace and cane, the medical records indicate only that these items were "issued" to her at her request.

On March 6, 2019 (sixteen months after she applied for SSI benefits), Plaintiff had an appointment with a staff physical therapist at the Veteran's Administration. Plaintiff's chief

---

[3] Plaintiff started receiving early social security retirement income at age 62. ([9] at 61).

4

complaint was "I need a cane, back brace and bp pills." ([9] at 467). Notes from the visit state that Plaintiff "requested a back pain [sic] and cane" and that the physical therapist ordered a cane upon Plaintiff's request. ([9] at 468). On the same day, it appears that Plaintiff applied for a "disabled" parking pass on the basis that she "[c]annot walk without the use of an assistive device." ([9] at 280). The medical records from the same March 6, 2019, visit where the cane was requested state that Plaintiff was ambulatory, had a low risk of falling, and no history of falling in the previous three months. ([9] at 470-71).

Social Security Ruling 96-9p states, "to find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." *See* Social Security Ruling 96-9p, 1996 WL 347185, *6 (Jul. 5, 1996). The undersigned has not found anything in the record establishing that Plaintiff's use of a cane is medically necessary or required. Plaintiff points to no evidence in the record that she used a cane at any medical appointment or that a medical professional suggested that Plaintiff use a cane. As the record stands, it appears that Plaintiff simply requested a cane and was provided one with no finding that the device was medically necessary.

Substantial evidence supports the ALJ's findings that Plaintiff's peripheral neuropathy and lumbar spine were not severe impairments that would interfere with Plaintiff's ability to work. Plaintiff reported that she could perform her personal care needs, including making meals for herself and completing household chores. ([9] at 59). On June 18, 2018, Dr. Alvin Brent reviewed Plaintiff's medical records and found that Plaintiff "ambulates without assistance," had a normal gait, and concluded "severe physical problems not described/agree with prior non severe rating." ([9] at 392).

While an exam of Plaintiff's feet showed that the "vibratory sensation is diminished on the right foot only," the same physical exam found "light touch [] intact [bilaterally]", that Plaintiff's musculoskeletal "strength and ROM are fluid and free of crepitus and pain" and that Plaintiff had a normal gait. ([9] at 361). The podiatrist identified that Plaintiff had a ganglion cyst on her left foot which Plaintiff stated was not bothering her. The podiatrist prescribed gabapentin for her peripheral neuropathy. ([9] at 361). Plaintiff's medical records indicate that she has received increased doses of the gabapentin, but Plaintiff has denied adverse reactions or side effects and stated that the medicine helps her symptoms. ([9] at 361, 495).

Notes from a June 6, 2019, podiatry appointment observed that Plaintiff had "decreased sensation to the toes." ([9] at 448). However, notes from the same visit show that Plaintiff had "no pain on palpitation or ROM" and that Plaintiff reported that the gabapentin overall improved her neuropathy symptoms. ([9] at 448). A foot examination showed that Plaintiff's cranial nerves were "grossly intact" and showed no edema. ([9] at 468).

Plaintiff also claims that she had an "abnormal MRI" that the ALJ did not consider. On April 16, 2019, notes from an MRI of Plaintiff's spine state that Plaintiff "had facet hypertrophy[4] and intervertebral disc changes at L3-L4 and L4-L5." ([9] at 509). However, notes from the same MRI state "[o]therwise, no significant abnormality." ([9] at 510). Additionally, imaging of Plaintiff's lumbar spine showed no acute process and "satisfactory lumbar vertebral body alignment." ([9] at 511).

---

[4] Facet is "a small plane surface on a hard body, as on a bone"; hypertrophy is "the enlargement or overgrowth of an organ or part due to an increase in size of its constituent cells." *Dorland's Illustrated Medical Dictionary* 642, 859 (29th ed. 2000).

Plaintiff bears the burden of proving that she suffers from a severe impairment. *See Giles v. Astrue*, 433 Fed. App'x 241, 246 (5th Cir. 2011). Plaintiff has not met this burden. Plaintiff has not demonstrated that her peripheral neuropathy and lumbar spine complaints are more than slight abnormalities that would have more than a minimal effect on her ability to work.[5] Substantial evidence, as noted above, supports the ALJ's findings at step two that Plaintiff had no severe impairments.

### Issue 2: Dr. Hartness

Plaintiff argues that the ALJ did not offer sufficient justification for finding the consultative examiner Dr. Harness's opinion to be unpersuasive, and that this error was not harmless as "the Vocational Expert testified that there would be no work available in the national economy for a person who had all the functional limitations listed in Dr. Hartness's report."[6] ([11] at 12, 14; [9] at 65).

In 2017, the Social Security Administration revised its regulations regarding the evaluation of medical evidence. These revised regulations are applicable to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520b. Because Plaintiff's claim was filed after March 27, 2017, the Court applies the revised regulations.

---

[5] The undersigned notes that the ALJ applied a severity standard that comports with the "minimal effect" standard set forth in *Stone v. Heckler*. ([9] at 20). In *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021), the Fifth Circuit determined that SSR 85-28 is consistent with the *Stone* standard. If an ALJ uses the "minimal effect" language of SSR 85-28 and applies this standard, the precise wording is not "substantially different enough to warrant a finding of error. *See Jeansonne v. Saul*, 855 F. App'x 193, 196 (5th Cir. 2021) (defining severe impairment and finding no error where an ALJ applied SSR 85-28's "minimal effect" language rather than the *Stone* standard).

[6] The ALJ found that Plaintiff had no severe impairments at step two. Because she ended her analysis with finding Plaintiff has no severe impairments, the ALJ was not required to determine whether jobs are available in the national economy that Plaintiff can perform. *See* 20 C.F.R. §§ 404.1520, 416.92.

7

Under the revised regulations, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions," including those from treating medical sources. *See* 20 C.F.R. § 404.1520c(a). Instead, an ALJ must evaluate the "persuasiveness" of medical opinions by utilizing five factors: supportability, consistency, relationship with the claimant, specialization, and other factors.[7] *See* 20 C.F.R. § 404.1520c(c). The most important factors are supportability and consistency. *See* 20 C.F.R. § 404.1520c(b)(2). An ALJ is required to explain how she considered the supportability and consistency factors, but need not explain how she considered the other factors in determining the persuasiveness of the medical opinion. *See* 20 C.F.R. § 404.1520c(b)(2).

Dr. Hartness performed a physical exam of Plaintiff on February 5, 2018. ([9] at 340-344). He noted that Plaintiff was able to walk to the exam room without assistance, sit comfortably, and get on and off the table. He noted that Plaintiff did not use an assistive device. He noted that her blood pressure was high. He observed Plaintiff walk with a "slow, steady gate" but found that she was unable to perform "toe-heel, hopping, or squatting." ([9] at 342). Dr. Hartness diagnosed Plaintiff with essential hypertension[8] only. ([9] at 343). He found that Plaintiff could stand/walk for six hours in an eight-hour workday, did not use an assistive device, could lift/carry/push/pull 50 pounds occasionally/25 pounds frequently. ([9] at 344). He found that Plaintiff could frequently climb steps, balance, stoop, and crouch. However, he found that Plaintiff could reach overhead and forward only occasionally due to the limited range of motion on both shoulders.

---

[7] Other factors include, but are not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability programs, policies and evidentiary requirements." *See* 20 C.F.R. § 404.1520c(c)(5).

[8] Essential hypertension is high arterial blood pressure occurring without discoverable organic cause. *Dorland's Illustrated Medical Dictionary* 858 (29th ed. 2000).

The ALJ found Dr. Hartness's opinion "unpersuasive, as exams that are more recent do not support postural or manipulative limitations." ([9] at 22). This evaluation of Dr. Hartness's opinion is supported by substantial evidence.

As previously mentioned, Plaintiff was regularly documented as having a normal gait, without the use of an assistive device. ([9] at 361, 365-66, 374, 448, 449). On May 29, 2019, medical staff examined Plaintiff and found that she had a normal musculoskeletal examination, with fluid strength and range of motion, and a normal gait. ([9] at 361). On June 19, 2018, Dr. Alvin Brent found Plaintiff's upper extremity strength was 5/5, her lower extremity strength was 4/5, her reflexes normal, and her gait normal. ([9] at 392). On June 26, 2019, a musculoskeletal exam showed "no pain on palpitation or ROM." ([9] at 448).

The law is clear that the ALJ has the sole responsibility of determining a claimant's disability status and is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). The ALJ considered Plaintiff's subjective complaints, medical records, and the medical opinions of record. The ALJ's decision is supported by substantial evidence and comports with applicable law.

## CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, the undersigned finds that the Commissioner's decision is supported by substantial evidence and that no reversible error of law was committed by the ALJ. Accordingly, the undersigned recommends that the Commissioner's final decision be AFFIRMED and this action be DISMISSED with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing

party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

This the 6th day of June, 2022.

s/Michael T. Parker<br>
UNITED STATES MAGISTRATE JUDGE